Report of majority of Committee in favor of Mr. Hawkins.
Assembly Chamber, April 7, 1869.
Mr. Hegeman, from the committee on privileges and elections, presented a report in the cáse of the contested seat of John Decker, as follows:
Report of the Committee on Privileges and Elections, in the Matter of the Election of John Deoeer as Member of Assembly for the County of Richmond in the State of New York, Contested by Willett N. Hawkins.

To the Assembly:

The standing committee on privileges and elections, to whom was referred the memorial -of Willett N. Hawkins, claiming the seat of *449 member of Assembly from the county of Richmond, now occupied by John Decker, respectfully report: . • ,.
That they have examined with great care the testimony taken'on ' the part of the contestant, Hawkins, before the Hon.' O. T>. Metcalf, county judge of Richmond county, and certified to the clerk of tire Assembly in compliance with the statute; that at great length and with equal care, they have taken the additional evidence adduced by' the parties, and have heard the arguments and examined the points of the counsel on both sides.
The difficulties arising in the case, arising from the remoteness of the disti’ict, and the extreme unwillingness of witnesses, in many cases, to come to New York, have been overcome by an examination of many of these at different points on Staten Island by your committee during the recent recess of the Legislature.
Three candidates presented themselves for member of Assembly in the contested district, with the following result, as certified by the board of county canvassers: ' .
Dor Samuel Marsh, Jr., one thousand one hundred and nineteen; for John Decker, two thousand and eighty ; and for Willett N. Hawkins, two thousand and 4Y votes, giving Mr. Decker a majority of thirty-three votes, and upon which the certificate of election was awarded.
The evidences of irregularities and informalities throughout the district, are positive and numerous — -irregularities arising in ' part from gross ignorance on the part of inspectors, and partly from misapprehension of, and an intentional violation of thé law, in the preparation of the registers.
* ' In the second district of Oastleton the registry was re-opened after it had been legally closed at the proper time.
In the first district of Northfield the inspector’s sat, not alone on a day other than that provided by law, but the posted registry was torn down and another substituted in its place. Six persons were permitted to vote, also, who were not registered.
In the third district of Northfield seventeen persons unregistered were allowed to vote.
In the first district of Middletown the registers sat on Alonday, November 2.
The above named districts are each parts of an incorporated district.
Similar irregularities and violations of law occurred in the first and second districts of Westfield, but neither being parts of an incor *450 porated district, they come under the law of 1859, which is directory and not mandatory in its provisions.
Your committee are fully impressed with the belief that something should be done immediately in the way of legislation to prevent the recurrence of irregularities, so general as are these throughout a whole Assembly district, and that it is a matter of the gravest concern to the people of this State,'that additional safeguards be thrown around the ballot-box to protect it from fraud and ignorance.
While your committee are clearly of opinion, that upon a strict construction of the law, the vote in four of the above-named districts could be rejected they have reached their final conclusion in the case, through' a careful investigation of the legality of the election in the second district of Middletown.
In this district eighty-seven votes were cast by persons whose names were on the poll-list-but not on the register. About fifty-two of these illegal votes were cast for Mr. Decker, and about twelve for Mr. Hawkins, leaving, from this view of the case, forty ballots to be deducted from Mr. Decker’s vote; a number more than sufficient to elect Mr. Hawkins. -A' careful comparison of names, however, discovers a slight similarity in the sound and spelling of a portion of those on the poll list and registry, and your couirnittee concluded to give Mr. Decker the benefit of the legal doubt, as to the character of these ballots, and to decide the case upon the legality of the registry itself, in this second district of Middletown.
The law of 1865 as amended in 1866, and under which the vote in the district must be judged, requires that “ a register shall contain a list of the persons entitled to vote, alphabetically arranged by surnames, at full length, and that in cities and incorporated villages,' the residence also of. the voter, by the number of the dwelling, or other location o.f such voter; that four copies shall be made out, and that each copy with the register shall Toe certified to be a true list. of the votes in the district.”
The days upon which the registry is to be made up are fixed by law, and the sitting of the boards on those days is imperative.
The facts, as shown by evidence uncontradicted, are as follows :
1. That in this second district of Middletown, the inspectors fixed the days and the registering of names to suit their own convenience in utter disregard of the law, to wit, that they sat on Tuesday and Wednesday, October 13 and 14, on Saturday, October 31 and November 2.
*451 2. That this so-called registry, filed in the office of the town, clerk, consists of a book containing a list of names. It contains not the residence of a single voter in the district. It is not certified. It is simply a list of names, and in the absence of oral and explaining testimony, it would be impossible to determine its real character. It contains no stamp of official authority; not a word; or mark on its face gives any indication that it was intended to be.-a register.’ It was made in utter and willful ignorance of the law, it has no validity, and can, in no legal sense, be called or deemed a register, such as the law requires.
Your committee, therefore, on a careful, thorough and impartial review of the case, have rejected .the whole vote in the second district of Middletown, and have decided that Willett N. Hawkins is the duly elected member of Assembly from the county of Richmond, and recommend the adoption of the following resolution :
Resolved, That Willett N. Hawkins is the duly elected member of Assembly for the county of Richmond, and is entitled to the seat now occupied by John Decker.
All of which is respectfully submitted.
WILLIAM W. HEGEMAN.
W. A. CONANT.
NATHAN B. SMITH.
J. H. SELKREG. •
See testimony following report, pages 1 to 124, inclusive.
Assembly Document, vol. 7, 1869, No. 103.
Which was laid on the table and ordered printed. .
REPORT OF MINORITY OF COMMITTEE IN FAVOR OF .Mr. DECKER.
Mr. Moseley, from the minority of the' committee on privileges and elections, presented a minority report, as follows :
Minority Report from the Committee on Privileges and Elections in the Case of Willett N. Haweins, Contestant, against
Hon. John DeoKer, Incumbent.
The undersigned dissents from the report of the majority of the committee on privileges and elections declaring Willett N. Hawkins entitled to the seat from the county of Richmond now held by Hon. John Decker. No case has been proved upon which such action can justly be founded. After a thorough scrutiny of the election in that *452 county, in which the contestant has been afforded, by a committee controlled by his political friends, every facility that any man could desire, he has only been able to prove that one person, a man by the name of Driscoll, who had been absent from the State, voted for Mr. Decker, in respect to whose right to vote in that county there was any doubt whatever. A few electors, who had not been duly registered, voted at the election and some for each candidate; but if every vote cast by persons in respect to whose right to vote at that election the slightest doubt could be raised were stricken from the poll, Mr.
■ Decker would yet be elected. It is therefore found by the majority necessary to throw out the vote of the second district of Middletown which gave sixty-four majority .for Decker. Why ? • Is any fraud shown ? Not the slightest. Every impostor of the election in that district as they have testified themselves voted against. Mr.’ Decker, as they had' no motive to do anything to aid his election. The contestant beiran his case by disputing the votes given by eighty-seven persons in that district whom his counsel stigmatized as “bogus.” This was his main point. Mr. Decker brought nearly all of the eighty-seven personally before the committee and proved that they voted some for him and some for each of the other two candidates. The eighty-seven included some of the oldest, most respectable and best known residents of the village of Edge water. All but two were legal voters of that election district, and of the two one who voted for Mr. Decker had moved into an adjoining town before the election, and the other who voted for Mr. Marsh was a soldier entitled to immediate naturalization papers upon his certificate of honorable discharge, who had not taken out his naturalization papers. The attack upon these eighty-seven voters was a disgraceful failure.
It appears that a few persons,' not duly registered, voted, and that each of the three candidates received some of these votes. What then ? The registry law of I860 declares (section 6) that “ any vote”. received from an unregistered person, “ shall be void, and shall be rejected from the count, in any legislative or judicial scrutiny into any result of the election.” The vote of the individual, not that of the'whole district, is tobe rejected. This provision, the same section, further declares, “shall be taken and held as mandatory and not as directory.” Will the Assembly defy the law that the two Houses have deliberately enacted ? Is it so important to unseat Mr. Decker that the Assembly should set so bad an example of law-breaking %
It also appeared that the inspectors in that district held a session *453 and registered a few votes on the Monday next before the election. Surely, the voters registered on that day were, at the most, unregistered voters. It was not a crime for an elector to have his name put down on an unauthorized day. He was either registered then or he was not. If he was registered no objection can'be taken to his vote. If he was not registered then his vote must be disposed of in the way the law provides in respect to the votes of unregistered persons. . In the first election district of Westfield, which gave eighty-seven majority for Hawkins, the inspectors not only sat on the Friday next before the election, but, as is proved by one of them, they added to the registry on that day the names of over fifty persons who did not appear before them. As Tottenville, which is included in that district, is not yet incorporated, the registry law of 1859 applies to the district, and it was just as illegal to register then, under that law on the 30 th of October, as it was to register in the Edge water district, under the law of 1865, on the.2d of November. One law is just as binding as the other, except that the $ixth section, and that in fact only of the law of 1865, is declared to be mandatory,
If, therefore, the Middletown district is to be thrown out for registering on^an unauthorized day, the Westfield district should also be thrown out. That would increase Mr. Decker’s majority. Will the Assembly throw out one district because it is democratic, and refuse to throw out others to which precisely the same objection applies, because it is republican ? Some other unimportant objections are made to the registry in the second district of Middletown. The copy of the registry, put in evidence by the contestant, does not state the residences of the voters, but the registry law of 1865 is not imperative in requiring such statement to be made, except in cities. Neither does the law require any heading to be made to the registry. The contestant carefully omitted to put the original registry in evidence. If he had produced it perhaps his case would have been even weaker than it is. There is no doubt that the bopk produced by him is substantially a copy of the registry of the district. It h.as been treated as such throughout the whole of the investigation. As the 'validity of the copy has not been questioned, the technical objections made to it are merely captious, and present no reason for disfranchising voters in that district.
The seats of half of .the members of the Assembly could prodably be disputed on as good grounds as are presented against Mr. Decker; such merely technical objections can always be made. They have *454 never heretofore been tolerated. Is it wise to permit them now? The contestant and .his counsel have made no secret of the fact that they rely, not upon their case, but upon the majority possessed by their political friends. •
This is the whole truth. If the politics of the parties were reversed, the case presented now by the contestant would be simply a subject of ridicule. Will the precedent now be set of throwing out an incumbent, clearly elected, and the undoubted choice of his district, in the entire absence of frauds, and only upon irregularities of the most trivial character ? It is unworthy the character of the Assembly and of the State. There will be other elections to take place and other legislators will meet, and no good citizen can view, without regret, the establishment of such a precedent.
The undersigned respectfully recommends the adoption of the following resolution :
Resolved, That the petition of Willett N. Hawkins to be admitted to the seat now occupied by Hon. John Decker, be denied.
All of which is respectfully submitted.
WILLIAM W. MOSELEY.
Assembly Document, 1869, vol. 10, No. 144.
Mr. Hitchman moved that said report be made a special order for Tuesday morning, immediately after reading of the Journal.
Mr. Speaker put the question, whether the House would agree to the said motion of Mr. Hitchman, and it was determined in the affirmative, two-thirds of all the members present voting in favor thereof.' :
Assembly Journal, 1869, vol. 1, page 910.
CONSIDERATION OE P.EPORT POSTPONED.
Assembly Chamber, April 13,1869.
Mr. Speaker announced the special order being the majority and minority reports in the case of Willett.N. Hawkins, claiming the seat of member of Assembly, now occupied by John Decker..
Mr. Hitchman moved the adoption of the minority report.
Mr. Speaker put the question, whether the House would agree to said motion and it was determined in the negative.
Ayes, 56; Noes, 56.
Mr. Hitchman moved that the consideration of the majority report be postponed for one week.
*455 Mr. Speaker put the question, whether the’House would agree to said motion and it was determined in the affirmative.
Assembly Journal, 1849, pages 1Q61 to 1067. . ■
CONSIDERATION OF REPORTS RESUMED.
Assembly Chambee, April 27, 1869.
Mr. Hegeman rose to a question of privilege, and moved that the majority report of the committee on privileges and elections, in the case of Willett 1ST. Hawkins, claiming the seat occupied by John Decker, be now adopted.
And upon that motion he moved the previous question.
Mr. Jacobs raised the' point of order, that the report could not now be considered, except by unanimous consent.
The Speaker decided the point of order not well taken, the report being a privileged report.
Mr. Jacobs appealed from the decision of the chair.
Pending the question.
On motion of Mr. Jacobs, the House took a recess until four o’clock, P. M.
Foub o’clock, p. m.
The House again met.
The question being upon the appeal of Mr. Jacobs from the decision of the chair, the appeal was withdrawn by Mr. Jacobs.
The motion for the previous question was withdrawn by Mr. Hegeman.
Mr. Burns moved that the consideration of the report be postponed one week.
Mr. Speaker put the question whether the House would agree to the said motion, and it was determined in the negative.
Ayes, 48. Noes, 58.
Repobt of Majority Adopted. — Willett N. ¡Hawkins awarded Seat.
Mr. LaBau moved that said report be adopted, and on that motion moved the previous question.
Mr. Speaker put the question, “ Shall the main question be now put ? ” and it was determined in the affirmative.
Mr. Speaker put the question whether the House would agree to said report, and it was determined in the affirmative.
Ayes, 66. Noes, 47.
*456 Willett H. Hawkins declaeed duly Elected.
Willett H. Hawkins was then declared the duly elected member ot Assembly from the county of Richmond, and entitled to the seat now occupied by John Decker, who thereupon appeared at the bar of the House, when the constitutional oath was administered by the Speaker.
PRIVILEGES OE TIIE FLOOR EXTENDED TO Mr. DECKER.
Mr. Hegeman moved that the privileges of the floor be extended to Mr. Decker during the remainder of the session.
Mr. Speaker put the question whether the House would agree .to said motion, and it was determined in the affirmative.
Assembly Journal, 1869, vol. 2, pages 1578, 1579, 1580 and 1581.